Michael R. Totaro  102229
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272
(888) 425-2889 (v)
(310) 496-1260 (f)
ocbkatty@aol.com

Attorneys for Debtor/Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| In re<br><br>**BLUE WAVE ENTERPRISES, LLC,**<br><br>Debtor/Debtor in Possession. | Case No. 3-22-01075-CL11<br><br>**Chapter 11**<br><br>NOTICE OF MOTION AND MOTION BY DEBTOR AND DEBTOR IN POSSESSION MOTION FOR ORDER AUTHORIZING:<br><br>(1)  SALE OF REAL PROPERTIES AT 550 HIGHWAY 75 AND 624 7TH ST., IMPERIAL BEACH, CA 91932 OUTSIDE THE ORDINARY COURSE OF BUSINESS PURSUANT TO SECTION 363(b) AND FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTION 363(f);<br><br>(2) A DETERMINATION BUYER IS A GOOD FAITH PURCHASER PURSUANT TO SECTION 363(m);<br><br>(3) APPROVAL OF OVERBID PROCEDURES;<br><br>(4) AUTHORIZING DISBURSEMENT OF PROCEEDS; AND<br><br>(5) WAIVING THE 14-DAY STAY IMPOSED BY FRBP 6004;<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    December 12, 2022<br>Time:    2:30 p.m.<br>Ctrm:    318<br>         325 W. F St.<br>         San Diego, CA 92101-6991 |

**TO THE HONORABLE COURT, THE SUBCHAPTER V TRUSTEE, THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Debtor and Debtor in Possession Blue Wave Enterprises, LLC ("Debtor") in the above captioned case, respectfully moves this Court for an Order:

1. Authorizing the sale of the real property located at 550 Highway 75, Imperial Beach, CA 91932 and 624 7th St., Imperial Beach, CA 91932 which includes three lots APN 625-140-08, 626-070-33 and 626-070-57 (the "Property") outside the ordinary course of business and free and clear of liens, encumbrances and interests pursuant to 11 U.S.C. §§363(b) and (f)(3) &(5);

2. Deeming buyer Amazing Blue Wave, LLC ("Buyer") or any to be a good faith purchaser pursuant to 11 U.S.C. §363(m);

3. Approving Overbid Procedures;

4. Authorizing escrow to disburse sale proceeds to pay the liens, costs of sale, commissions, and property tax claims with the balance of the proceeds if any to be disbursed to the Debtor in Possession ("DIP") account; and

5. Waiving the 14-day stay imposed by FRBP 6004 ("the Motion").

Debtor seeks this Court's order to authorize the above referenced sale of the Property which will benefit the estate by paying the majority of the encumbrances. The proposed sale of the Property is for the highest and best offer Debtor has received in the last several years and based on a proposed sale negotiated in good faith in an "arm's length" transaction without any collusion by any party.

On October 21, 2022, Amazing Blue Wave, LLC ("Buyer") through its managing member Jeffrey Fleming, submitted its offer to purchase the Property for the amount of $4,950,000.00. This is memorialized by execution of a Vacant Land Purchase Agreement and Joint Escrow Instructions and related documents. On November 5, 2022 Debtor submitted a Counteroffer No. 1, Addendum No. 1 and Bankruptcy addendum No. 1 to

Counteroffer executed by both managers in response to Buyer's Offer. The Buyer accepted these by signing all documents on November 7, 2022. Addendum No. 1 which included the second address and corrected the Assessors' Parcel Number given adding correct numbers for all three lots. The Bankruptcy Addendum removed all contingencies. All documents have been signed by Buyer and Debtor as Seller. Collectively these documents are referred to as the Purchase Agreement and attached as Exhibit 1 herein.

The Property has been marketed for several years prior to filing this case with no offers. This is the only offer Debtor has received and in Debtor's business judgment it is currently the best option Debtor has. The overbid process will assure Debtor receives the highest and best offer possible. Thus, the sale is in the best interest of the estate.

The Property, which includes three parcels of essentially vacant real estate in San Diego County, is Debtor's only asset and with the sale will pay off commissions, closing costs, its secured loans, and property taxes. There is a large judgement lien which was recorded within the preference period and could be avoided through an adversary action. Debtor does not have funds to engage in litigation but will seek to have the Court order the sale free and clear of this lien pursuant to Bankruptcy Code Section 363(f)(3) & (5).

## THE PURCHASE AGREEMENT

The sale shall be pursuant to the terms contained in the attached fully executed Purchase Agreement effective November 7, 2022. Exhibit 1.

Pursuant to Local Bankruptcy Rule 6004-1(c)(3), Debtor provides the following information:

(A)  The date, time and place of the hearing is December 12, 2022, at 2:30 p.m. in Courtroom 318 of the above-entitled Court located at 325 W. F St., San Diego, CA 9201-6991. Any Opposition to the Motion must be filed by November 25, 2022, and any Reply by Debtor by December 2, 2022.

(B)  The Property being sold has two addresses: 550 Highway 75, Imperial Beach, CA 91932 and 624 7th St., Imperial Beach, CA 91932 (the "Property") which is

comprised of a 3 lots totaling 1.34 acres, mixed use development. The Legal Description for these lots is attached as Exhibit 2.

(C)   The Buyer is Amazing Blue Wave, LLC ("Buyer").

(D)   The terms of the sale include, without limitation, the following:

(1)   The purchase price of $4,950,000.00 for the Property which is inclusive of commissions and payable by initial deposit of $100,000.00, to be deposited in escrow within 24 hours after court approval of the sale, and the balance of the purchase price due before the closing date of escrow;

(2)   Escrow for the sale of the Property shall close **not later than** 45 days after entry of the order approving the sale;

(3)   The Property is being sold on an "as is" "where is" basis, without any representations or warranties, with no loan, appraisal or inspection contingencies;

(4)   Buyer warrants its financial resources are as represented and sufficient to purchase the Property at the agreed price;

(5)   The sale is free and clear of liens, encumbrances, and interests pursuant to 11 U.S.C. § 363(f)(3) & (5) as set forth herein;

(6)   The sale is subject to overbids; Debtor shall seek to sell the Property subject to the followings Overbid Procedures:

**(a)** <u>Overbid Amount and Purchase Agreement</u>.

Any person or entity desiring to submit an overbid for the purchase of the estate's interest in the Property ("Overbidder") shall advise Debtor's bankruptcy counsel (contact information listed above) of his, her or its' intent to bid on the Property and the amount of the overbid (the "Overbid"), which must be at least a total of $5,000,000,00 (i.e., the current sales price of the Property plus a $50,000 minimum overbid), cash or certified check payable to the Debtor, by no later than 5:00 pm (PST), on the business day that is at least two days prior to the hearing on the Motion (the "Overbid Deadline"). In its absolute sole discretion, the Debtor or its' counsel shall have the right to accept an

Overbid at any time after the Overbid Deadline.

The Overbidder must accept and agree to a sale that contains a purchase price of at least the minimum overbid and terms and conditions that are the same as, or not less favorable to the estate (in Debtor's sole discretion) than, the terms stated in the Purchase Agreement between Debtor and the Buyer (Exhibit 1).

**(b)** Payment of Deposit and Evidence of Financial Ability to Perform.

Any Overbidder shall submit to Debtor's bankruptcy counsel: (a) a cashier's checks made payable to "Blue Wave Enterprises, LLC", in the amount of at least $50,000.00 to serve as a deposit towards the purchase price of the Property (the "Property deposit"); and (c) evidence that the Overbidder has the financial wherewithal to close the contemplated sale. The Deposit and evidence of financial wherewithal must be delivered so that these items are received by both Debtor's counsel no later than the Overbid Deadline. In its' sole and absolute discretion, Debtors or their counsel shall have the right to accept these items at any time after the Overbid Deadline.

In the event of any Overbid, the initial deposit tendered by the Buyer shall be refunded as well as any other deposits by other potential overbidders upon close of escrow.

**(c)** Auction, Due Diligence, Consummation of Sale and Forfeiture of Deposit.

In the event the Debtor receives any Overbid, the bidder will be able to participate in an auction to be conducted at the hearing on the Motion as is necessary to increase their bid.

Subject to Court approval, Debtor recommends that the first overbid be in the amount of $50,000.00. Debtor also recommends that thereafter overbids shall be made in minimal increments of $20,000.00 (subject to adjustment as appropriate) such that the next highest minimum overbid at any auction shall be an amount no less than $5,020,000.00. All due diligence is to be completed prior to the hearing on the Motion,

as the sale is an "as is" "where is" basis, with no warranties, representations, recourse or contingencies of any kind whatsoever.

The Debtor will request authority to sell their estate's interest in the Property to the bidder who, in the Debtor's business judgment, makes the highest and best Overbid (the "Winning Bidder"). Debtor shall be authorized to sell their estate's interest in the Property to the next highest and best Overbidder in the event the Winning Bidder fails to perform ("Backup Bidder"). Debtor reserves the right to reject any and all overbids that, in its' or counsel's business judgment, are insufficient.

The Winning Bidder's Deposit shall be applied towards the total and final purchase price. The Winning Bidder must pay the full amount of the successful overbid to escrow and close escrow within forty-five (45) days from the date of entry of the Order authorizing the sale, or as otherwise set forth in the applicable purchase agreement.

To the extent the Winning Bidder is unable, unwilling or otherwise fails to consummate the Sale, that bidder's entire Deposit shall become non-refundable and forfeited to the Debtor and, in the event of a Backup Bidder, Debtor shall be authorized to proceed with a sale to the Backup Bidder (at the Backup Bidder's last bid at the auction).

To the extent a bidder is not the winning Bidder, that bidder's Deposit will be refunded by Debtor, except that Debtor shall not refund the Deposit of any Backup Bidder until the sale to the Winning Bidder closes.

**(d)** <u>Agreement to terms and Overbid Procedures</u>.

Any bidder's tender of a Deposit to Debtor shall serve as that bidder's consent to, and agreement with, these proposed Overbid Procedures and the terms and conditions of the Sale as set forth in the applicable purchase agreement, and agreement not to object or seek to modify the Overbid Procedures in any manner. If there are no overbids the Purchase Price will be $4,950,000.00 as listed in Exhibit 1.

(7) The sale is subject to Bankruptcy Court approval after providing notice to Debtor and their counsel, the United States Trustee, all creditors, and other parties in

interests as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.

  (8) The costs of sale include real estate commissions in the amount of 6% of the sales price of the Property to be divided with 3% to the Seller/Debtor's Agent/Broker and 3% to the Buyer's Agent/Broker.

  (9) There are no remaining contingencies, except Bankruptcy Court approval.

 (E) The proposed sale is free and clear of liens and encumbrances beyond those covered by the sales price of the Property.  All voluntary liens will be paid from the sale proceeds. Each creditor should make a demand into escrow for the current amount owed. However, there is a large judgment lien in the amount of $2,445,881.00. The Purchase Price is not sufficient to pay all of this claimed secured amount. However, the Abstract of Judgment in favor of Ed Fleming, no relation to Buyer's managing member with the same last name, which created the lien recorded on February 16, 2022, is within the 90 period before the Petition was filed on April 24, 2022, and the lien avoidable as a preference and could be treated as unsecured debt.  Section 363(f)(5) is applicable and allows a sale free and clear of this lien as discussed further herein.

 (F) The sale is in the best interests of the estate and will at least pay off all valid liens provided for in this case, administrative costs, broker/agent commissions, and costs of sale, etc.  There may be some residual for unsecured creditors but not be enough to pay all claims;

 (G)  Unless otherwise stated in the Order on this Motion, all surplus funds after paying the above cees and costs, shall be disbursed to Debtor's DIP account to be disbursed in accordance with Debtor's Plan of reorganization or any Court Order;

 (H) The exact tax consequences to the estate relative to the sale are presently unknown.

 **PLEASE TAKE NOTICE** that the Motion is made pursuant to 11 U.S.C. §§363(b),(e),(f) & (m), 365, FRBP 2002, 3020(a) and 6004, as well as Local Bankruptcy

Rule ("LBR") 6004 and 9013.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities and the Declarations of Susan L. Hackett, David Brienza and Michael R. Totaro, the supporting exhibits, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, Debtor requests that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion you must file a written response no later than November 25, 2022. The failure to timely object may be deemed by the Court to constitute consent to the relief requested herein. If you do not have any objections to this Motion, you need not take any further action.

**WHEREFORE**, Debtor respectfully requests that the Court enter the orders set forth herein.

Dated: November 8, 2022               Respectfully submitted,

                                      Totaro & Shanahan

                                      By  /s/ Michael R. Totaro
                                      Michael R. Totaro
                                      Attorneys for Debtor/Debtor in
                                      Possession

7

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION AND BACKGROUND

### A. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This proceeding is a core proceeding under 28 U.S.C. §157(b)(2). Venue of the case and Motion is proper in this district pursuant to 28 U.S.C. §1408. The statutory predicates for the relief sought are sections 105, 363(b), (f)(3) and (m) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure Rules 2002, 3020, 6004, 6006, and 9014.

### B. General Background

Debtor is the owner of 3 parcels of real property in Imperial Beach, California known as 550 Highway 75, Imperial Beach, CA 91932 and 624 7th St., Imperial Beach, CA 91932 (collectively the "Property"). There are three APNs, 625-140-08, 626-070-33 and 626-070-57. The three properties were refinanced into one loan but remain three individual properties. On April 24, 2022, Debtor filed this Chapter 11 Subchapter V case with the intention of either refinancing or selling all parcels. The full legal description is attached to the Declaration of David Brienza as Exhibit 2.

The Property is encumbered by a first deed of trust in favor of Addison Technology, Inc., et al ("Movant") herein asserted to be in the amount of $4,204,836.54. There is also a judgment lien in favor of Ed Fleming ("Fleming") in the amount of $2,445,881.14 recorded on February 16, 2022, which Debtor believes is a preference by an insider since Fleming is a member of Debtor and clearly record within the 90-day preference period and could be avoided. Totaro Dec. ¶5.

Debtor had purchased the Property for a specific development project in 2017 and 2018 and has worked to obtain required governmental approvals and entitlements necessary for the development. Brienza Dec. ¶4.

### C. Value of the Property

The Property had been on the market for several years prior to filing and did not receive any offers. Debtor questions the efforts to market the Property. In fact, after filing Debtor had to reject the existing listing agreement which was with one of its members as the agent before it could be listed by approved real estate agent and broker. The Court approved employment of real estate agent Susan L. Hackett and Rodeo Realty in Beverly Hills, as agent and broker with experience in selling properties in chapter 11 cases. Docket No. 63.

The most recent appraisal provided by the lender in its Motion for Relief from Stay shows no change in value since the loan was made. Docket No. 56. This showed a Land Value of $4,125,000.00 and "As Is" with entitlements of $5,670.000.00. Although Debtor does not agree with these appraised amounts, the Property was listed at $6,000,000.00 not much higher than the "As Is" value with entitlements lender proposed. The purchase price to be approved in this Motion is $4,950,000.00, somewhere between the lender's values. This was the only offer received knowing it was required to get the Property sold rather quickly in this case. Hackett, Dec. ¶12-13.

The Property has been marketed for at least 3 years prior to filing this case with no real offers. Since the approval of Debtor's agent/broker with extensive marketing, they only received three inquiries. Debtor's managing member, real estate agent and bankruptcy counsel all believe this is the highest and best price Debtor was likely to obtain under the circumstances. Hackett Dec. ¶2 ; David Brienza Declaration. ("Brienza Dec."), ¶¶14-15 and Declaration of Michael R. Totaro ("Totaro Dec."), ¶3.

The offer in this case was submitted by Amazing Blue Wave, LLC ("Buyer") on October 21, 2022, as a Vacant Land Purchase Agreement and Joint Escrow Instructions to purchase the Property for $4,950,000.00. The initial offer contained only one of the property addresses and a single incorrect APN. On November 4, 2022, Debtor submitted Counteroffer No. 1, Addendum No. 1, correcting the description of the Property and

Bankruptcy Addendum No. 1 to Counter-Offer. These latter documents were signed by both of Debtor's managers on November 5, 2022, and by Buyer on November 7, 2022. Each of these referenced documents comprise the Purchase Agreement which is attached as Exhibit 1. Hackett Dec., ¶¶13-15.

The sale of the Property will be subject to overbids at the hearing on this matter which is set for December 12, 2022 at 2:30 pm before this Court. This should assure Debtor receives the highest and best price

Debtor believes the purchase price of $4,950,000,00 reflects the market value of the Property. Indeed, the true value of a property is what a buyer is willing to pay in a negotiated sale. See *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 538 (1994).

## THE PROPOSED SALE

### A. Material Terms of the Purchase Agreement

Debtor proposes to sell the Property to the Buyer in accordance with Bankruptcy Code §§363(b), (f) and (k). The Purchase Agreement as defined herein was fully executed on November 7, 2022. See Exhibit 1.

**1. Purchase Price**

The sale involves a purchase price for the Property of $4,950,000.00.  Exhibit 1,

**2. Purchased Assets**

The physical address of the Property is 550 Highway 75, Imperial Beach, CA 91932 and 624 7th St., Imperial Beach, CA 91932, There are three APN's 625-140-08, 626-070-33 and 626-070-57 (the "Property"). The Legal Descriptions of the Property are set forth in Exhibit 2.  Brienza Dec., ¶¶2,17.

**3. No liabilities will be assumed by the Buyer.**

The Buyer assumes no liabilities. The sale will be free and clear of liens pursuant to 11 U.S.C. §§ 363(f)(3) and (5).

**4. Deposit**

Buyer has agreed to make a deposit of $100,000.00 within 24 hours of the court entry of an order approving the sale. The balance of the sale price will be paid prior to the closing. Exhibit 1.

**5. Closing**

The Purchase Agreement provides for the sale to close within 45 days after the entry of the Court Order approving the Sale. However, Debtor has been advised the sale will close by the end of this year. Totaro Dec., ¶4.

**6. Representation, Warranties and Covenants**

The Buyer will accept the purchased assets at the closing "as is, where is" with no contingencies whatsoever. See Exhibit 1.

**B. Overbid Procedures**

To assure Debtor receives the best price for the Property, the sale will be subject to the overbid procedures set forth herein. Essentially this provides for an initial overbid of $50,000 for an offer of $5,000,000 for the Property. If bidding proceeds further bids should be in increments of $20,000 unless the Court directs differently.

The Motion is filed pursuant to LBR 6004(c). Debtor does not anticipate any objections as the Purchase Price which will pay all of the first liens, taxes, costs of sales, commissions, etc. Totaro Dec., ¶6.

## LEGAL ANALYSIS

**A. THE PROPOSED SALE SHOULD BE APPROVED UNDER SECTION 363(b) SINCE IT IS SUPPORTED BY A SOUND BUSINESS PURPOSE AND IS IN THE BEST INTERESTS OF THE ESTATE.**

Pursuant to 11 U.S.C. §363(b), a Debtor may, with court approval, sell or lease property of the estate outside the ordinary course of business. The standards for approval of a sale pursuant to Section 363(b)(1) require the proponent of the sale to establish that: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interests of the

estate, i.e., the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *In re Industrial Valley Refrig. & Air Cond. Supplies, Inc.*, 77 B.R. 15, 21 (Bank. E.D. Pa. 1987). A court has broad discretion to authorize a sale under 11 U.S.C. §363(h). See *In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988), see also *In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993).

The courts will find that a proposed sale is in the best interests of the estate where the Debtor has a valid "business justification" for the proposed sale. See *Stephans Indus. Inc. v. McClung*, 789 F.2d 386, 390; *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr.S.D. Ohio 1984). A debtor's application of its sound business judgment in the use, sale or lease of the property is subject to great judicial deference. See *In re Moore*, 110 B.R. 924 (Bankr.C.D. Cal. 1990); *In re Walter*, 83 B.R. at 19-20. The Court's decision to authorize a sale under §363(b) is reviewed for abuse of discretion. *Id.*

> There must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case. As the Second Circuit held in *Lionel* [722 F.2d 1063, 1071 (2nd Cir. 1983)], the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, . . . alike.

*In re Walter*, 83 B.R. at 19-20.

In interpreting Section 363(b)(1) courts have held that a transaction involving property of the estate should be approved where the debtor can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Walter*, 83 B.R. at 19-21. The courts should consider various factors including the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. See *Equity Funding Corp. Of Am. v. Fin. Assocs.* (*In re Equity Corp.*), 492 F.2d 793, 794 (9th Cir. 1974).

Here, the proposed sale is supported by a valid business justification. While Debtor owes more than the value of the Property, a large part of this is a judgment in favor of a member Debtor in the amount of $2,445,881.14. The Creditor recorded an abstract of judgment just 67 days prior to Debtor filing this case. This is within the preference period and the sale will be free and clear of all liens. Totaro Dec., ¶5. After all costs of sale, commissions, valid secured claims, priority claims there will be probably over $264,000.00 available to be paid to unsecured creditors pro rata. If there is an overbid the amount could increase depending on the amount. Totaro Dec., ¶ 6.

It is the business judgment of the Debtor's manager, and counsel after considering potential alternatives, the proposed sale is in the best interests of Debtor, the estate, and its' creditors. Totaro Dec., ¶ 3, Brienza Dec., ¶¶ 14-15, Hackett Dec., ¶ 16.

### B. THE PROPOSED SALE SHOULD BE APPROVED FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

Debtor is seeking authority to sell the Property free and clear of all liens and encumbrances pursuant to 11 U.S.C. §363(f). Section 363(f) provides:

> The Debtor may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> 1.   Applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> 2.   Such entity consents;
>
> 3.   Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> 4.   Such interest is a bona fide dispute; or
>
> 5.   Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code §363(f) are written in the disjunctive, authority to sell the property free and clear of any and all liens, claims, and interests should be granted if any of the conditions are met with respect to each interest

holder. *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Ellliot*), 94 B.R. 343, 345 (E.D. Pa. 1988). In addition, any debt can be discharged by full payment of the underlying debt pursuant to Section 363 (f)(3). *Scherer v. Federal National Mortgage Association (In re Terrace Chalet Apartments, Ltd.)* 159 B.R. 821, 829 (Bankr. N.D. Ill 1993).

In this case the first lienholder with a voluntary lien will be paid in full of the sale proceeds. The Property taxes will also be paid in full from the sale. Section 363(f)(3). The only other secured claim is that of Ed Fleming who has a recorded judgment lien which can be avoided as a preference. Totaro Dec., ¶ 5. Pursuant to Section 363 (f)(5) the sale can be free and clear of this lien because the creditor "could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest."

The judgment lien is based on money being owed and because the security interest can be avoided as a priority the creditor could be compelled to accept money satisfaction. Therefore, this section should be applicable. In addition, the Property is not a Debtor's principal residence, and as such Debtor could file a motion pursuant to 11 U.S.C. §506(b) to bifurcate and avoid this junior lien to the extent it is unsecured and would have to be paid pro rata with unsecured creditors. There will never be enough funds in the estate to pay all liens. Section 363(f) permits title to transfer free and clear of liens and encumbrances on the Property in this case.

To the extent any other party who may assert an interest in the Property receives notice of the Motion and does not file a written objection hereto, such party should be deemed to have consented to the proposed sale of the Property free and clear of its asserted interest. *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990). Debtor is hopeful that lienholders who clearly cannot be paid from this sale will consent to the sale without payment as there is no possibility of anyone buying the property with all these liens attached.

Given all the above, Debtor asserts that this Court should approve the sale of the Property free and clear of any and all liens, claims, and interests under Bankruptcy Code §§363(f) and (k).

### C. THE BUYER SHOULD BE DEEMED A GOOD FAITH PURCHASER PURSUANT TO SECTION 363(m).

11 U.S.C. §363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease was stayed pending appeal.

The Bankruptcy Code does not specifically define good faith; however, the Ninth Circuit has said that a good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert* (*In re Ewell*) 958 F.2d 276, 281 (9th Cir. 1992). "Lack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the Debtors, or an attempt to take grossly unfair advantage of other bidders.'" *Id*., quoting *Community Thrift & Loan v. Suchy* (*In re Suchy*), 786 F.2d 900, 902 (9th Cir. 1985).

> The requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3rd Cir. 1986) (citations omitted).

In this case, Buyer is purchasing the Property which is part of the bankruptcy estate. Buyer has offered to pay a fair market price for the Property and the terms are fair and equitable. The anticipated sale was negotiated at "arm's length" between the respective Buyer and Debtor. Buyer made the offer to purchase the Property for

$4,950,000.00 which is the first and best offer Debtor has received in over three years of marketing. Buyer has proposed to pay all cost of inspections, sale etc. except that Debtor is to pay 50% of the city and county transfer fees. There are no contingencies to the sale except for bankruptcy court approval and an overbid procedure with the sale to close within 45 days of court approval. Buyer does not know Debtor and there is no collusion with any party or any attempt to take unfair advantage of anyone in this sale offer. Brienza Dec., ¶ 18.

Based on the foregoing, Debtor submits the Court may properly determine the Buyer and any potential overbidder to be a "good-faith purchaser" within the meaning of 11 U.S.C. §363(m).

**D.   THE COURT SHOULD AUTHORIZE ESCROW TO PAY THE EXISTING LIEN, OUTSTANDING PROPERTY TAXES, COSTS OF SALE AND REAL ESTATE AGENTS-BROKERS COMMISSIONS PER THE PURCHASE AGREEMENT AND DISBURSE THE BALANCE OF FUNDS TO THE SUBCHAPTER V TRUSTEE MARK SHARF TO HOLD IN TRUST FOR THE ESTATE.**

The Purchase Agreement provides for real estate commissions to the agents/brokers in the total amount of 6% of the purchase price. The commissions are to be split between the agents/brokers for Debtor/Seller and the agents/brokers for the Buyers. Hackett Dec., ¶ 4. The Court should authorize payment of the full commissions out of escrow. As noted there are no closing costs being paid by Debtor as the Buyer has agreed to pay all such costs and fees. Exhibit 1. The only items to be paid at closing consist of the claims of the first lienholder, property taxes, and commissions, priority claims for US Trustee fees, legal fees, and California taxes. The balance should be paid by escrow to the debtor in Possession account to be held pending a confirmed plan or court order as to disbursement.

The following is a list of payments and approximate amounts where applicable Debtor is requesting the Court approve to be paid from the sale proceeds:

| Payee | Basis for claim | Amount |
|---|---|---|
| Addison Technology, et al | 1st lien | 4,204,835.54 |
| San Diego County | Claim 3-2 Property taxes | 106,014.18 |
| Rodeo Realty | Seller's Commission | 148,500.00 |
| Derrick Biron Paine III | Buyer's Commission | 148,500.00 |
| Escrow | Seller' Costs of Sale | Minimal unknown |
| US Trustee | US Trustee Quarterly Fees | 40,000.00 |
| Priority admin claims | Subchapter V Trustee | 2,775.00 |
| Priority admin claims | Debtor's Attorney's Fees | 35,000.00 estimated |
| **Total Estimated Paid** | | **$4,685,624.72** |
| **Total Estimated Balance** | | **264.375.28** |

The foregoing shows that the sale will provide a benefit to the estate. Totaro Dec., ¶ 6, Brienza Dec., ¶¶ 14-15.

Pursuant to FRBP 3020(a) Debtor requests the Court order the balance of the sale proceeds be deposited Debtor's DIP account to hold for purposes of distribution as further required by the Court and/or under the Chapter 11 Plan in this case.

### F. WAIVER OF THE 14-DAY STAY IS REQUESTED.

In order to complete the sale in this case, and to not miss the opportunity presented by the sale to Debtor, the estate and its creditors, Debtor respectfully requests that the order on this Motion be effective immediately, notwithstanding the 14-day stay imposed by *FRBP* 6004(h). Under this Rule, the Court has the discretion to waive the stay which is appropriate in this case. This is very important as the Buyer is ready to close as soon as possible to benefit from her guaranteed interest rate which is about to expire. In addition, waiver of Bankruptcy Rule 6004(h) will permit the sale to close as soon as possible and

prevent added interest from accruing. Therefore, it is especially important that the Sale Order be entered promptly and that *FRBP* 6004(h) is waived to permit a prompt closing.

## CONCLUSION

Based on the foregoing, Debtor respectfully requests the Court enter an Order after a hearing stating:

1. The Motion is granted;

2. The Sale of the Property is supported by a sound business justification and in the best interests of the estate;

3. Debtor is authorized to sell the Property outside the ordinary course of business pursuant to Section 363 (b) on the terms set forth herein;

4. Buyer is deemed a good faith purchaser, entitled to the protections as provided in Section 363(m);

5. The Sale shall be free and clear of the existing liens pursuant to Section 363(f)(3) & (5):

6. Escrow is authorized to pay the distributions as set forth herein;

7. Escrow is directed to disburse the remaining balance of the sale proceeds to Debtor's Debtor in Possession account to be paid according to a Plan of Reorganization or Court Order.

8. The 14-day stay as to the effectiveness of the order shall be waived and the parties authorized to close escrow as soon as the order is entered;

9. Such other and further relief as the Court deems just and proper.

Dated: November 8, 2022                    Totaro & Shanahan

By: /s/ Michael R. Totaro
    Michael R. Totaro
    Attorneys for Debtor and
    Debtor in Possession